SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**NICOLE M. BOCKELMAN, OSB # 105934**
Assistant United States Attorney
Nicole.Bockelman@usdoj.gov
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:17-CR-00307-AN** |
| **v.** | **GOVERNMENT'S MEMORANDUM REGARDING THE ADMISSIBILITY OF OUT OF COURT STATEMENTS AT THE SUPERVISED RELEASE VIOLATION HEARING** |
| **JOSHUA KANE BRITTON,** | |
| **Defendant.** | |

Defendant harassed and assaulted his ex-girlfriend, Adult Victim 1 (AV1), on April 8, 2026, by throwing his phone at her and left a mark on her that was still visible by a police officer who responded to defendant's in-progress trespass, disorderly conduct, and menacing of AV1 three days later on April 11, 2026. AV1 is a reluctant, if not hostile, witness. Consistent with well-established abuse cycles, she made a statement at Mr. Britton's state court release hearing expressing support for defendant and minimizing her fear of him. But AV1's statement did not

deny the assault or defendant's follow-up criminal conduct—which was captured mid-incident by the responding officer's body camera. The question for the court here is not about confrontation rights. There is no Sixth Amendment confrontation right in SRV proceedings; moreover, the government is producing AV1. She has been subpoenaed, the government has communicated with her (through her own counsel), and she is expected to appear and testify, although the government anticipates she may be a hostile witness. The only question for the court is: is the government's evidence—which is all admissible—sufficient to prove the allegation by a preponderance? *Hall* dictates the answer: yes.

**Procedural Background**

On August 21, 2019, the Court sentenced defendant to 120 months' imprisonment and five years of supervised release following a plea to possession with intent to distribute methamphetamine, 21 U.S.C. § 841(a)(1), (b)(1)(A). ECF 59. Mandatory Condition #1 of that judgment requires that he "must not commit another federal, state or local crime." *Id*. He commenced supervision on November 29, 2024. On April 13, 2026, the United States Probation Office filed a Petition for Warrant or Summons alleging a violation of that condition based on defendant's April 11, 2026, arrest by Portland Police Bureau following an incident at AV1's residence. ECF 80.

Defendant made his initial appearance in federal court on April 14, 2026 and was detained. On April 30, 2026, the Court released him subject to a no-contact condition and location monitoring. ECF 89. On April 24, 2026, U.S. Probation filed its first Supervised Release Violation Recommendation. The Performance Summary described both nights: on April 11 defendant went to his ex-girlfriend's house seeking property, was "driving back and forth outside of her home threatening her," and "tried to pry the garage door open"; earlier on April 8, he attempted to slap

her, then picked up her phone and threw it at her face, "causing bruising and swelling under the victim's left eye." Probation filed amended recommendations on June 29, 2026, August 12, 2026, and September 10, 2026. ECF 97. Each recites a single allegation—violation of Mandatory Condition #1 by a new-law violation, conduct that concluded on April 11, 2026—and each noted the pending state charges as Assault in the Fourth Degree and Harassment in Multnomah County Case No. 26CR19894. In addition, the government filed a Notice of Supervised Release Violations on September 22, 2026, alleging that defendant's conduct additionally constitutes the crimes of Harassment, Disorderly Conduct, Criminal Trespass in the Second Degree, and Menacing, as described in the already-filed probation recommendations. ECF 105.

On May 14, 2026, the government produced and provided to the defense the PPB report concerning the events spanning April 8 to April 11, the three 911 call audio recordings on April 11, photographs of AV1's injury, and Officer Moreland's body-worn camera footage. The government has moved to introduce that evidence. ECF 103. Defendant objects to the admission of AV1's out-of-court statements. ECF No. 104 at 2. He acknowledges that "[i]f the witness appears and testifies," then his concerns shift to "bear[ing] on the weight of her prior statements rather than their admissibility." *Id.* at 5. Defendant's objection stems from an earlier procedural posture in which AV1's availability was uncertain and defendant claimed insufficient notice of the new crimes associated with the April 11 incident. *Id.* at 8–9. Now, the government has secured AV1's expected appearance and provided additional written notice—based on pre-existing facts—of his new law violations committed on April 11. This Court continued the hearing to give defendant more time to prepare. The Court also ordered AV1 to return to court at the final Supervised Release Violation hearing scheduled on October 22, 2026.

The Multnomah County charges in Case No. 26CR19894 were dismissed on July 28, 2026. That dismissal does not control this proceeding. "A violation of supervised release is determined on the basis of the defendant's conduct; it may be found whether [the defendant] was ever indicted or convicted of any particular offense." *United States v. Jolibois*, 294 F.3d 1110, 1114 (9th Cir. 2002); *see* U.S.S.G. § 7B1.1 cmt. n.1.

**Factual Background**

AV1, a 34-year-old woman, called 911 in the early morning of April 11, 2026, after defendant, her former boyfriend, refused to leave her home, pounded on her front door, and tried to pry her garage open. The government and defense have both received the three 911 audio recordings. Exs. 7–9.

Officer Moreland responded at approximately 3:00 a.m. He saw defendant's running vehicle in AV1's driveway. As Officer Moreland approached in his patrol car, defendant's vehicle drove directly at him. Officer Moreland challenged defendant, ordered him out of the vehicle, and restrained him. Walking toward the house, Officer Moreland saw that the garage door had been opened five to six inches. He knocked on the front door and heard furniture being moved away from the door before it opened. AV1 answered. Officer Moreland's body-worn camera recorded the encounter. Ex. 10.

AV1 told Officer Moreland that defendant had been at her house around 1:00 a.m., pounding on the front door and demanding entry; that she told him to leave; that he refused and said he had a key and would take her car and items he claimed belonged to him; that after she called 911 the first time he tried to pry the garage door open; and that he was controlling and assaultive. She further stated that three days earlier, on April 8, 2026, defendant tried to slap her, she blocked the slap and dropped her phone, and defendant picked up the phone and threw it at her

face, striking her under the eye. Officer Moreland photographed AV1 with makeup on and after she removed it. The photographs show a mark under the left eye, including an abrasion visible once the makeup was off. Exs. 1, 2, 6.

Officer Moreland then spoke with defendant. After *Miranda* warnings, defendant gave three differing accounts. First, defendant claimed that he knew nothing about what happened on April 8 and nothing about the marks on AV1's face. Then, he said that he noticed the mark but did not know where it came from. Finally, he claimed that he moved AV1's phone, did not know what made the mark, and said AV1 probably dropped the phone on her own face. Defendant admitted he had been at the property for two hours trying to get keys to his father's house, tools, and household items. Defendant was then arrested and charged with Assault in the Fourth Degree and Harassment in Multnomah County.

## Applicable Law

### A. The Federal Rules of Evidence and *Crawford* Do Not Govern This Hearing.

The Federal Rules of Evidence—except the rules on privilege—do not apply to a proceeding to revoke supervised release. Fed. R. Evid. 1101(d)(3); *United States v. Walker*, 117 F.3d 417, 421 (9th Cir. 1997); *Hall*, 419 F.3d at 987. The Supreme Court ruled in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) that the Sixth Amendment's Confrontation Clause protections do not extend to revocation proceedings. *Hall*, 419 F.3d at 985–86. "Parole revocations are not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply." *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *see also Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).

**B. Confrontation is not at issue.**

The defendant has a due process right under the Fifth Amendment to confront adverse witnesses "unless the government shows good cause for not producing the witnesses." *Hall*, 419 F.3d at 986 (quoting *Comito*, 177 F.3d at 1170); *United States v. Perez*, 526 F.3d 543, 548 (9th Cir. 2008). Rule 32.1(b)(2)(C) states this right: the releasee is entitled to "an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear." Fed. R. Crim. P. 32.1(b)(2)(C).

When the government offers hearsay in place of a live adverse witness, the Court balances "the releasee's interest in his constitutionally guaranteed right to confrontation against the Government's good cause for denying it." *Comito*, 177 F.3d at 1170. The weight of the confrontation interest "depends on two primary factors: the importance of the hearsay evidence to the court's ultimate finding and the nature of the facts to be proven by the hearsay evidence." *Id.* at 1171. Good cause looks to "both the difficulty and expense of procuring witnesses and the traditional indicia of reliability borne by the evidence." *Hall*, 419 F.3d at 988 (quoting *United States v. Martin*, 984 F.2d 308, 312 (9th Cir. 1993)). "Long-standing exceptions to the hearsay rule that meet the more demanding requirements for criminal prosecutions should satisfy the lesser standard of due process." *Hall*, 419 F.3d at 987.

Here, the government is not introducing hearsay in place of a live adverse witness. The government is making the witness available and is offering other evidence that is either non-hearsay or excepted from hearsay to establish the new law violation. The balancing test simply does not apply.

This case is on all fours with *Hall*. There, the government charged a new law violation based on domestic violence conduct that the victim had reported. The victim told several people

that her boyfriend had assaulted her: she told an examining doctor the same day; left a voice mail describing the incident to defendant's probation officer the next day; and gave reports several days later to two different police officers. *Hall* affirmed these out-of-court statements as admissible and found them sufficient to prove the SRV allegation.

First, *Hall* found that the nonhearsay evidence alone was sufficient to sustain the allegation. *Hall*, 419 F.3d at 986. That included testimony from another witness that Hall had hit the victim, Hall's out-of-court admission that he hit her, and photographs of her bruising. *Id*. Likewise here, a preponderance of non-hearsay evidence establishes, at minimum, the new-law violations of disorderly conduct and criminal trespass, including officer testimony and body camera recordings establishing defendant's car idling in the driveway still two hours after the victim's 911 call, the sound of the victim moving furniture from barricading the door to allow the officer in, the garage door partially open, and defendant's admission that he had been at the property for two hours trying to get keys to his father's house, tools, and household items.

Second, *Hall* found that other evidence subject to hearsay exceptions further supported the allegation. *Hall*, 419 F.3d at 987. So too, here. Evidence excepted from hearsay—like the 911 call and AV1's on-scene statements to the officer—add to the weight of the disorderly conduct and trespass findings (April 11); they also support the menacing (April 11), harassment (April 8), and assault (April 8) conduct. AV1's 911 recordings are excepted from hearsay under Rule 803(2) as excited utterances because they capture AV1's statements relating to a startling event made while under the stress of the excitement that it caused—defendant, her ex-boyfriend, pounded on her front door, tried to pry her garage open, and was still at the property, refusing to leave, when she made the 911 call. *United States v. Gomez*, 472 F. App'x 601, 603 (9th Cir. 2012) (911 call made during the reported event qualified as excited utterance).

AV1's statements to the officer are also excited utterances made while still under the stress of the event—the officer arrived, defendant was still there and drove at the officer, the officer restrained defendant and spoke to AV1 minutes later on-site. *United States v. Orozco*, 2025 WL 2028317, at *1 (9th Cir. July 21, 2025) (statements made shortly after attack were excited utterances); *United States v. Jones*, 739 F. App'x 376, 380 (9th Cir. 2018) (same). That some of AV1's statements describe a days-earlier incident does not negate their excited and stressed nature because the two incidents are inextricably connected: she was terrified of defendant on April 11 in part because defendant had assaulted her on April 8.

And, just like in *Hall*, corroborating evidence, including the observation and photographs of the injury that AV1 reported, as well as defendant's own shifting story and admission that he moved the phone, round out the non-hearsay and excepted-from-hearsay evidence supporting the new-law violation allegation. *See Hall*, 419 F.3d at 986–87 (noting the corroborating photographs of the victim's injuries); Fed. R. Evid. 801(c) (witness's personal observations not hearsay); Fed. R. Evid. 801(a) (evidence that is not an oral or written assertion or nonverbal conduct is not a statement); Fed. R. Evid. 801(d)(2)(A) (opposing party statements not hearsay); Exhibits 1–6, 10 (officer's photographs and body camera footage).

**C. Even if AV1's out of court statements were hearsay offered in place of a live witness, they are admissible under the Rule 32.1(b)(2)(C) balancing test.**

The Rule balances "the releasee's interest in his constitutionally guaranteed right to confrontation against the Government's good cause for denying it." *Comito*, 177 F.3d at 1170. And the weight of the confrontation interest "depends on two primary factors: the importance of the hearsay evidence to the court's ultimate finding and the nature of the facts to be proven by the hearsay evidence." *Id.* at 1171. Here, defendant's confrontation interest has been fulfilled. AV1

has been subpoenaed and is expected to testify. Moreover, defendant's confrontation interest is low, at least as to the ultimate finding of a new-law violation based on disorderly conduct and/or trespass, because the court can rely entirely on other evidence to conclude that defendant committed those crimes. The timeline of events, the officer's observations, and reasonable inferences drawn from those facts, establish such conduct under a preponderance standard.

On the other hand, the government has established good cause to admit AV1's statements on the 911 call and to the officer, even assuming they are hearsay (which they are not). Good cause looks to "both the difficulty and expense of procuring witnesses and the traditional indicia of reliability borne by the evidence." *Hall*, 419 F.3d at 988 (quoting *United States v. Martin*, 984 F.2d 308, 312 (9th Cir. 1993)). Here, the government has procured the witness. And the statements have strong indicia of reliability given that they were excited utterances, are corroborated by other physical evidence including the partially open garage door and defendant's injuries consistent with her reporting, are further corroborated in part by defendant's own statements admitting to being at the property for two hours to take items from it, and gain credibility against defendant's shifting story—which includes an admission that he "moved" the phone. These circumstances make this case similar to *Orozco*, 2025 WL 2028317 at *1–2 (finding weak interest in confrontation outweighed by the government's good cause).

**D. If AV1 Invokes Her 5th Amendment Right Not to Testify, Her Prior Recorded Statements and the Statements She Made To Officer Moreland Are Still Admissible**.

In a supervised release revocation proceeding, the rules of privilege apply even though the rest of the Federal Rules of Evidence do not. Fed. R. Evid. 1101(c), (d)(3). The Fifth Amendment privilege "can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory." *Kastigar v. United States*, 406 U.S. 441, 444, 92 S.Ct. 1653, 32

L.Ed.2d 212 (1972). It protects a witness against answers that "would furnish a link in the chain of evidence needed to prosecute." *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). If AV1 invokes the privilege and the Court sustains it, AV1 is unavailable. That invocation is itself good cause for proceeding without her live testimony. The government cannot compel a privileged answer, and Rule 32.1(b)(2)(C) does not require the Court to do so. Other out-of-court statements or evidence offered by the government—photographs after makeup was removed, defendant's three differing accounts of the incident, the admission that he physically moved the phone, Officer Moreland's first-hand observations of the April 11 scene, the 911 recordings, and the body-worn camera—are all admissible regardless of whether AV1 invokes her 5th Amendment privilege for the reasons previously discussed.

Moreover, notwithstanding that the rules of evidence don't apply, to the extent that AV1 is a hostile witness or a witness identified with an adverse party, the court "should allow" the government to ask leading questions. Fed. R. Evid. 611(c)(2). The government anticipates AV1 may be hostile, and is identified with an adverse party, given her recent expressed support of defendant. Ultimately, AV1's apparent disinclination to participate in this proceeding does not negate the preponderances of facts establishing that defendant committed new crimes while under supervision.

/

/

/

/

/

/

**Conclusion**

The government's proffered evidence is admissible and sufficient to support the violation allegation. This Court should admit the government's evidence and sustain the allegation. .

Dated: October 5, 2026

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

/s/ Nicole Bockelman

NICOLE BOCKELMAN, OSB # 105934
Assistant United States Attorney